No. 01-677

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 24N

VENCOR, INC., d/b/a PARK PLACE
HEALTH CARE CENTER, a corporation,

Plaintiff and Appellant,

v.

MARJORIE GRAY,

Defendant, Respondent and Cross-Appellant.

APPEAL FROM: District Court of the Eighth Judicial District, Cause No. BDV-00-174
In and for the County of Cascade,
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Karl K. Rudbach, McPherson & Hutchison, L.L.C., Great Falls, Montana

For Respondent:

Cresap S. McCracken, Attorney at Law, Highwood, Montana

Jeffrey S. Ferguson, Hoines & Ferguson, Great Falls, Montana

Submitted on Briefs:  April 4, 2002

Decided:  February 14, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Appellant Vencor, Inc., d/b/a Park Place Health Care Center ("Park Place"), filed a complaint in Montana's Eighth Judicial District Court seeking payment from Defendant Marjorie Gray ("Gray") for the care it provided to Gray's mother, Helen Harris ("Harris"). Gray was the guardian of Harris and the conservator of her estate.

¶3 The District Court granted Gray's Motion to Dismiss for Failure to State a Claim, Motion to Strike, Judgment on the Pleadings/Motion for Summary Judgment. Park Place now appeals. We affirm in part and reverse in part.

¶4 We address the following issues on appeal:

¶5 1. Did the District Court err in holding as a matter of law that Gray, in her capacity as Harris' guardian and conservator, has no liability for Harris' debts to Park Place?

¶6 2. Did the District Court err in holding as a matter of law that Gray, as Harris' adult child, has no liability for Harris' debts to Park Place?

BACKGROUND

2

¶7   In 1994, Gray was appointed guardian and conservator of her mother's estate.  At that time Harris' estate consisted of more than $97,000.00.  On August 25, 1994, in her capacity as guardian, Gray signed an agreement with Park Place, an elder care facility, for Park Place to provide resident care for Harris.

¶8   Over the ensuing years, Gray made payments on behalf of her mother to Park Place.  By April of 1997, however, Harris' estate was nearly exhausted, and Gray so advised Park Place.  Despite this apparent lack of resources, both Gray and Park Place allowed Harris to remain at its facility.  Gray made the final payment of $675.00 on May 20, 1997.  When Harris died ten days later on May 30, 1997, there was an outstanding balance of $12,349.94 on her account with Park Place, and the estate indeed was nearly depleted.

¶9   Park Place contends that Gray is legally responsible to pay the remainder of her mother's debt to Park Place.  Park Place brought an action against Gray alleging breach of contract, unjust enrichment, quantum meruit, equitable estoppel, breach of fiduciary duty, deceit, negligence, negligence per se, and violations of §§ 40-6-214 and 40-6-301, MCA.  The District Court granted Gray's Motion to Dismiss for Failure to State a Claim, Motion to Strike, Judgment on the Pleadings/Motion for Summary Judgment.  Park Place appeals.

                          STANDARD OF REVIEW

¶10  A motion for judgment on the pleadings pursuant to Rule 12(c), M.R.Civ.P., must establish that no material issue of fact remains and that the movant is entitled to judgment as a matter law.  The

3

pleadings are to be construed in the light most favorable to the nonmoving party, whose allegations are taken as true. Because a motion for judgment on the pleadings is decided as a matter of law, we apply our standard of review for conclusions of law: whether the decision was correct. *Hedges v. Woodhouse*, 2000 MT 220, ¶ 8, 301 Mont. 180, ¶ 8, 8 P.3d 109, ¶ 8.

¶11  Rule 12(c), M.R.Civ.P., which governs motions for judgment on the pleadings, states: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment  and disposed of as provided by Rule 56 . . . ." Our standard of review in appeals from summary judgment rulings is *de novo*. *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 265, 900 P.2d at 903 (citations omitted).

DISCUSSION

ISSUE ONE

4

¶12  Did the District Court err in holding as a matter of law that Gray, in her capacity as Harris' guardian and conservator, has no liability for Harris' debts to Park Place?

¶13  Gray was appointed as temporary guardian of her mother on August 16, 1994, and later appointed as her guardian and conservator on October 3, 1994.  On August 25, 1994, acting in her capacity as temporary guardian, Gray entered into a contract with Park Place to provide assisted living, medical services, and goods for Harris.  When Gray signed the contract, she signed on the line designated as "Resident or Conservator or Legal Guardian."  The contract states that the "Resident agrees to pay for services and supplies provided by the Center under the terms of this Agreement . . . ."

¶14  Gray made payments to Park Place from August 25, 1994 to May 20, 1997.  The checks Gray used had printed in the upper left corner: "Helen I. Harris, Conservatee" and "Marjorie Ann Gray, Conservator."

¶15  In the Spring of 1997, Harris' account was delinquent and Gray informed Park Place that her mother's estate was nearly depleted.  Park Place and Gray allowed Harris to remain at the facility even though both were aware of Harris' deteriorating financial situation.  In conversations between Gray and Park Place, Gray discussed an easement as a possible source of money that would be available to pay Harris' bills.  At no time did Gray sign any document stating she would personally pay her mother's debts.

¶16 Gray's last payment was made on May 20, 1997. When Harris died ten days later, on May 30, 1997, there was still $12,349.94 owing on the account. On June 29, 1997, Gray notified Park Place that she would not be making further payments on Harris' account.

¶17 The District Court entered an order granting Gray's combined motions, concluding that she was not personally liable to Park Place for her mother's outstanding account. The court determined that Gray properly entered into the contract for her mother's care as a fiduciary and was not at fault or responsible for the remaining balance of her mother's account. The District Court further ruled that Gray was not statutorily obligated to satisfy her mother's debt.

¶18 On appeal, Park Place asserts that the District Court erred in ruling as a matter of law that Gray is not individually liable for the outstanding balance on Harris' account. Park Place acknowledges that as a general rule a conservator is not individually liable on a contract properly entered into in her fiduciary capacity. Section 72-5-436(1), MCA. Park Place directs our attention to an exception to the general rule, however, that being when the conservator is personally at fault. In such instances, the conservator may be held individually liable. Section 72-5-436(2), MCA.

¶19 Park Place contends that the District Court failed to consider the application of this exception to the facts of this case. Specifically it alleges the District Court erred in concluding that no material question of fact exists as to whether Gray was at fault

6

for allowing Park Place to continue providing services to Harris when Gray knew the estate was nearly depleted. Among other things, the nursing home contends that Gray was personally at fault in requesting Park Place to continue care for her mother when Gray knew there were insufficient assets in the estate to pay for the services. Park Place also submitted affidavit testimony that Gray personally promised to pay for the continued care. Also, Park Place points to the fact that there was $1086.86 left in Harris' estate which Gray refused to apply to the debt. Park Place asserts that a trial was necessary to sort out these disputed facts.

¶20 We agree with Park Place that there were issues of material fact that should have been submitted to the trier of fact. The District Court stated that there was no evidence that Gray was anyway at fault in her control of her mother's estate. Questions of fault, however, are not typically subject to summary adjudication. *Mills v. Mather* (1995), 270 Mont. 188, 194, 890 P.2d 1277, 1281. It is clear that there was over $1000 remaining in Harris' estate and available to apply to the Park Place account, yet Gray failed to do so. The trier of fact may conclude that Gray was at fault when she kept her mother in the nursing home, knowing all along that there was no more money to pay for the services. There was also affidavit testimony that could be interpreted as a promise on Gray's part to pay the balance.

¶21 When viewed in the light most favorable to Park Place, we conclude that there were questions concerning Gray's conduct that

7

may have triggered the application of § 72-5-436(2), MCA. The District Court erred when faced with this evidence by concluding as a matter of law that there was no fault on Gray's behalf.

ISSUE TWO

¶22  Did the District Court err in holding as a matter of law that Gray, as Harris' adult child, has no liability for Harris' debts to Park Place?

¶23  Park Place contends that under the facts presented, Gray is liable for Harris' debts as Harris' adult child. Park Place cites § 40-6-214, MCA, and § 40-6-301, MCA, in support of its argument. Section 40-6-214, MCA, states:

> It is the duty of the father, the mother, and the children of any poor person who is unable to maintain himself by work to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding.

¶24  In its order, the District Court declined to apply § 40-6-214, MCA, on public policy grounds stating:

> The Court is unwilling to open Pandora's box and find that, at the time § 40-6-214, MCA, was enacted, the Legislature contemplated that the statute having (sic) the application urged by the Plaintiff. To find that § 40-6-214, MCA, requires adult children to personally pay for the nursing home care of their elderly parents would prevent many families from seeking the care their parents may require. This is especially so in a guardian or conservatorship situation. No one would be willing to serve in such a capacity if they thought that, once the estate was depleted, they would be held personally liable for the ensuing debts.

¶25  To this Court's knowledge, applying this statute to the instant situation, is a case of first impression. The statute was originally enacted in 1895, with periodic re-enactments through

8

1947.  The operative word in the provision is "maintain."  We conclude that the meaning of the word "maintain" in the context of the statute is ambiguous.  Certainly the legislature in 1895 would not have entertained the idea that it included the obligation to "maintain" a person in a nursing home.  We conclude that the first sentence of the statute does not apply to this situation.

¶26  The second sentence of § 40-6-214, MCA, provides that " [t]he promise of an adult child to pay for the necessaries previously furnished to such a parent is binding." As to the merits of the application of this statutory obligation, the District Court held that  Gray could not be held responsible for breaching a personal promise to pay because such a promise would be unenforceable.  The court noted that § 28-2-903(b), MCA, requires that a promise to pay for the debt of another be in writing.  Park Place persuasively points out, however, that Gray was not being sued upon the promise to pay a debt of another but to answer for her own debt, which arguably arose from her promise and the application of § 40-6-214, MCA.  We agree with Park Place's analysis and conclude the District Court erred in concluding the promise must be in writing.

¶27  Finally, we address Park Place's argument based on § 40-6-301, MCA.  The statute  states:

> **Duty of child to support indigent parents.**  (1) It is the duty of every adult child, having the financial ability, to furnish and provide necessary food, clothing, shelter, medical attendance, and burial, entombment, or cremation costs for an indigent parent, unless, in the judgment of the court or jury, the child is excused by reason of intemperance, indolence, immorality, or profligacy of the parent.

9

> (2) If a county pays for burial, entombment, or cremation costs under 53-3-116, the county may seek reimbursement under this part, if applicable.

¶28 Section 40-6-303, MCA, provides for civil enforcement of § 40-6-301, MCA. It provides that a child, parent or the county attorney may institute an action for a violation of § 40-6-301, MCA. The District Court held that Park Place did not have standing as a creditor to bring an action under the section. We agree.

¶29 Gray cross-appeals for attorney fees. The District Court denied Gray's request for attorney fees without analysis. Based on the foregoing and our decision to reverse the District Court, the attorneys fee issue is not ripe for review.

¶30 Furthermore, Park Place points out that the District Court failed to address its equitable claims for unjust enrichment, quantum meruit, and deceit. The District Court is directed to address these issues on remand.

¶31 Affirmed in part, reversed in part and remanded.

/S/ JIM REGNIER

We Concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE

Justice W. William Leaphart concurring in part and dissenting in part.

¶32  I concur with the Court's conclusion that the first sentence of § 40-6-214, MCA, does not apply to the situation presented here, and I agree that Park Place does not have standing as a creditor to bring an action under § 40-6-301, MCA.  I dissent, however, on the question of whether a promise to pay for the debt of another under § 40-6-214, MCA, must be in writing as required by § 28-2-903(b), MCA.

¶33  The Court gives credence to Park Place's contention that Gray was not being sued upon the promise to pay a debt of another but to answer for her own debt which arguably arose from the application of § 40-6-214, MCA.  A promise to pay arising from the application of the second sentence of § 40-6-214, MCA, is, in my view, a promise to pay for the debt of another.  The statute only has application to an after-the-fact promise to pay for "necessaries previously furnished" to the parent.  When the necessaries are initially furnished to the parent, the parent owes the debt.  The debt is not initially the child's.  It is only later, after the necessaries are furnished, that the statute contemplates a child promising to pay for what was furnished to another, i.e. the parent.  Any promise to pay arising under § 40-6-214, MCA, is, by necessity, a promise to pay for what was previously furnished to "another," the parent.  As such, the law requires that the promise is unenforceable unless it is in writing. Section 28-2-903(b), MCA.

11

/S/ W. WILLIAM LEAPHART